Good morning. I'm Charles Morgan for the petitioner Mauricio Pena. I'd like to reserve a minute and a half or so at the end if I could to answer whatever the government has to say. The social group that we're arguing for is somewhat different. We believe that Mr. Pena, who has the remnants of tattoos across his forehead, is instantly identifiable as having been at one time a gang member. Which gang? Mara Salvatrucha. Therefore, he had an M and an S implanted on his forehead. We're talking about a kid who joined the gang at age 7 and quit at age 13. He attempted to have the tattoo removed through a program at Optimist High School, and a Beverly Hills plastic surgeon treated him for it. But all they were able to do was to lighten the tattoo so that the letters aren't really identifiable anymore. But the government stipulated that there is a mark there indicating that there was once a tattoo. The consequences of being a tattooed kid in El Salvador were dealt with by the immigration judge, who held that this kid had been thrown to the ground, beaten. At one point, the police pulled him off a bus and attempted to scrape a tattoo off of his forearm with a knife blade. And he had no problem concluding that this was persecution. He, therefore, granted withholding of removal. When the BIA took that record out, they arrived at a... They concluded that was erroneous. Well, and they did that in really very surprising language. Very unsurprising language? Very surprising language. Such as membership in a gang is not a protected ground? No, they dismissed the... Such as the government's desire to control gang violence is a lawful sanction? That's right. I don't know if the United States government wants to stand behind a decision that holds that. That to throw a kid to the ground, scraped off of the skin on his arm with a knife, could be a lawful sanction. The mistake the BIA made, I think is spelled out by this Court's opinion in a case called Montesino v. INS, where the 9th Circuit held that it doesn't make sense to evaluate what a persecutor is doing according to what that person says his goals are. You can't evaluate Nazis by saying that they had a rational purpose in mistreating the many groups of people they mistreated. As the Montesino case held, communists for many years had a policy of going after capitalists because from their point of view, capitalists were undesirable. You can't look at these things from the point of view of the persecutor. Even if you were to look at it from the point of view of the persecutor, and to believe that what the Salvadoran police had in mind was to curb gang violence against the populace, what on earth relationship does that have to throwing a kid to the ground, beating him up, and scraping his arm with a knife? That's not going to curb gang violence, I wouldn't think. Might even get more people to join gangs. Where do you suggest we find the standard by the legislature? All we're told is we're given a standard to deal with. It has to be done case by case. Social group. Okay. As was done in Hernandez Montiel, a gay man with feminine characteristics who was granted asylum in this country. That's not the case. Talk about this case. Where do I find the standard in either regulations or statute? Or legislative history? I don't believe you can, Your Honor. You need to look at the case law. Is the statute void? Pardon me? Is the statute void? For vagueness? If you can't figure out what it means? It sets forth — it doesn't really define social group. I think that's what's been left to the courts and to the BIA. Okay. Well, then it's whatever I think or whatever the panel thinks? Is that the standard by which social group is going to be defined? In accordance with the precedent, such as Hernandez Montiel, yes. Well, now that the BIA has issued some opinions of its own, and it is the entity with delegated expertise, isn't our job to apply — to defer to and apply its holdings? And if that's the case, I'll ask you the same thing I did, counsel, on the previous case. How does your situation fit into the construct that has been recently published by the BIA? I have to confess I'm at a loss. I'm not familiar with that case. It wasn't referred to me, and I didn't come across it in my own research, and I'm not familiar with the case. What I'm relying on are the precedents of the Ninth Circuit and the precedents of the BIA. If those have been modified, I'm afraid I'm not aware of it. So you're asking — what are you asking us to hold, that membership in a group such as the one that you talk about in this case is necessarily a social group and entitled to be dealt with as presenting a protected ground? Is that basically what you're asking us to hold? Yes. That if you've got a kid, and Mauricio Peña, although he is now in his 20s, in 2005 when he was 19, he is 4 foot 6 inches tall and weighs 80 pounds. A good part of the police brutality inflicted upon him, one might surmise, had to do with bullying him. But in any case, he's got marks that apparently cannot be removed. At least a professional attempted on two occasions, and the best he could do was enlighten — was to lighten those tattoos, so that he faces the same problem he had when he was in Salvador as a 7-year-old kid. Walking down the street, the police are going to grab him off and beat him up and scrape his arm and whatever else. Well, that is well and good, and I'm not trying to minimize what happened to your client, but it still is a question of whether it's a social group, not — you know, nobody doesn't get a protected ground designation just because we feel sorry for them. So the way I define the social group is it is people who have marks which identify them to the Salvadoran police as people worthy of being persecuted. That covers the whole universe? Of protected people? For social groups? You have to have the mark or you're not a member of a social group? You're not a member of this social group. Well, any social group? Well, there are a lot of different — Dealing with that, the statute just says social group. It doesn't say your social group or a specific social group. And we're trying to get to the bottom of what is a social group. By broad definition, not necessarily narrow to the extent of a mark or an indelible mark on the forehead. If it were that narrow, most of them would be excluded. This is a — Social group reasons. This is a very narrow social group. Well, your group, though, is gang members with tattoos on their forehead. Not necessarily. If it were a gang member without a tattoo, then it wouldn't be your social group. Is that what I hear you say? But it could also be a man with a tattoo who was never a gang member. This tattoo could have said U.S. Marine Corps. It wouldn't have made any difference. It's a tattoo. They would have shot at it. Wait a minute. There's nothing wrong with the Marine Corps. I was a member of that organization. I agree. And a lot of Marine Corps members had tattoos, not too many on their forehead. But the gang membership is irrelevant. He carries a mark that shows to the Salvadoran police that he was once a member of this group. And based upon that, they persecuted him. And what are your best cases that you want us to read before we make a decision in this case? I think that Hernandez-Montiel. Hernandez-Montiel. That's your key case. Yes. Counsel, you have about a minute left if you'd like to hold on to it for a little  Thank you. We'll hear from the government. May it please the Court. My name is John Devaney, and I'm here today on behalf of the Attorney General. Tag team. Tag team, right? What's that? Never mind. The issue before the Court today is the denial of Petitioner's applications for asylum, withholding, and protection under the Torture Conventions. Now, the Board did decide the social group issue in this case. However, it's the position of the government that the Court need not and should not decide that issue today. The Court need not decide the issue because the Board based its denial of Petitioner's applications on separate, independent grounds. The Court should not consider, should not rule on this question in the first instance because the Board has not. And under Ventura and Thomas. What hasn't the Board ruled on in this case? The Board has ruled on the issue of whether gang membership is a social group in this Your Honor, it's indicated before new case law by the Board. It did not consider the voluntary association test in Hernandez Montiel. So the Board needs to decide this question in light of new case law before the Court considers the issue. It seems like a novel proposition. The Board has actually decided case in a written opinion, which is a final order in this case. And, I mean, if there's new case law out there, then sort of it perpetually becomes incomplete and it just has to keep going back every time there's a new case. I guess I don't really understand that. It seemed to me that Ventura was designed for situations in which the agency had not, for one reason or another, had any opportunity or chose not to exercise its opportunity to decide an issue at all. And here it's issued a reasoned decision that was final. So I really don't understand how that's a Ventura problem. So as has been evident today, a social group is a continually evolving issue. And name something in the law that isn't continually evolving. I mean, Judge Graber's right. We've got a decision by the Board. Here it is, and you're trying to backtrack. I mean, I get the impression you don't want the Ninth Circuit to decide this issue. Anything to keep it out of the clutches of the Ninth Circuit? I don't think that's an accurate characterization. Well, then what's going on? I mean, what's the point here? You've got a decision in this case. It's disadvantaged somebody, and they're up here on a petition for review. Well, it would be improper to decide this case based on ---- Based on what the Board said? The Board said at the time, yes, with the changes in the law, with ---- You're saying the Board's decision is defective? I'm saying that the Board used a standard that might not be the standard this Court would choose to use. The Board ---- But that doesn't make any sense to me. I just have to be candid with you. Either the Board is correct and we should deny the petition, or the Board is incorrect and we should do something about that, either grant the petition outright, grant it in remand if the Board was wrong. But I don't understand this middle ground of saying, well, gee, we'd like another shot at it because we think the explanation could be even better or different today, but even though we have an explanation and a final order, I just ---- as a matter of administrative law, I just don't track. Well, as I said before, a remand would not be necessary in this case as the Board decided on separate independent bases the petitioner was not eligible for the relief he sought. Well, but he might be eligible on a proper standard if that's what the Board decides it's going to do one way or the other, according to you. Well, and that's why the case should go back to the Board if there's a social group issue. However, based on the fact the petitioner was unable to show persecution from gangs, he was unable to show persecution from the police, and he's failed to show eligibility under the Convention Against Torture, the social group issue does not need to be addressed today. Is this petitioner in custody? Actually, I'm unsure. Normally, that is shown on the briefing and it is not, so is it correct to assume that he's not in custody? Yeah. In the usual practice, if he is, it's listed on the briefing. Did you file a motion in this case as they did in the other case for reconsideration or whatever you called it of this issue? No, there was no such motion filed in this case. If you'd allow me to proceed, as I was arguing before, the social group issue does not need to be ruled on in this case as the Board's opinion denied relief to the petitioner on several independent bases, the first of which is that Petitioner failed to show persecution from police because he's failed to show persecution from gang members because he's failed to establish that the government of El Salvador is unwilling or unable to control gang violence. Additionally, he's failed to show persecution from police officers because he's failed to show the actions taken by the police are persecution on any of the accepted five grounds rather than simply legitimate law enforcement. And finally, under the CAT issue What does the record demonstrate was the legitimate law enforcement purpose of the incident that opposing counsel described? Well, as this Court has held No, I don't want to know what the Court has held. I want to know what the record shows factually as to what a legitimate law enforcement purpose was for that activity on the part of the police. The record has shown that generally the El Salvador government is cracking down on street The petitioner talks about getting taken down or groups of gang members getting broken up. The legitimate law enforcement purpose was breaking up congregations of gangs, things of that nature. And I think it's important to consider that in this case the deferential standard review that's applied to the Board, whether or not there's things that might suggest a contrary conclusion, this Court cannot overrule the Board unless the evidence compels the conclusion that the board was incorrect. If the board has concluded that these incidents where the police were breaking up gang violence and perhaps there was aggressive law enforcement, but if the board concludes that this was legitimate law enforcement, I don't see anything here on the record that compels the contrary conclusion. It's hard to figure out how police scraping tattoos off somebody with a knife is legitimate law enforcement. I would agree. It seems difficult. I would just argue you'd have to look at the encounters. I mean, if waterboarding is bad, how about this? Yeah, that's, you know, I'd argue it's one instance. There's going to be, with law enforcement, it's not going to be perfect. I'm sorry. Well, you're arguing two completely separate things. On the one hand, you're saying, well, it was bad, but it wasn't that bad, so it wasn't persecution. But Judge Trott's question, I think, is the same one that I was asking, which is, bad or not, how is or no matter how bad it is, how is it demonstrated on the record that it's legitimate law enforcement? In other words, we have to defer, but there has to be some evidence to support the finding. Well, as I've said, the Petitioner does talk about groups of gang members getting broken up by the police. He does talk about violence against gang members by the police as far as, you know, their goal could be to deter future criminal action by creating fear in these gang members. Outside of what happened here, you can see a larger pattern in the record of the police arresting, arresting, you know, hundreds and, you know, even thousands of people in these gangs, and I think you have to look at it as a comprehensive law enforcement effort. I mean, they're trying to make these, you know, gang members fearful of committing criminal acts, and I'd say that taking that in totality, that's what we're talking about here. Is there ever a line between legitimate law enforcement methods and illegitimate when you say they're trying to make people afraid to commit crimes? I mean, this isn't this case, but I guess I'm trying to understand the government's position on where that line is. If someone said we're going to shoot every, you know, kill every third gang member and that might really intimidate the rest, where do you draw the line? Well, it's difficult to tell exactly where to draw the line. This Court in Singh, if I can read a quote, says, Where there is evidence of legitimate prosecutorial purpose, foreign authorities enjoy much latitude in vigorously enforcing their laws. Even under Singh and Dino, the Court talks about heavy-handed approaches to justice. In fact, in Dino, a prisoner was beaten, attempted to make sign of false confession and things like that, and essentially the Court said, while this is, you know, while this might seem harsh to us, we give deference to what the foreign government says. But that was in response to an actual crime or a suspected crime. You're talking about crime prevention, which I think is something quite different. Well, if you're trying to scare the populace into not committing crimes, that is different than saying that you can prosecute crimes that have occurred vigorously. Well, it's entirely possible if you read the anti-gang laws that El Salvador has enacted. I don't remember the factors, but there's more than one person congregating, use of hand signals, presence of tattoos on their body. It's entirely possible that what was happening during these encounters described by Petitioner was activity that was illegal under El Salvador's new gang laws. It's impossible to tell. It seems likely that, you know, given the factors in the new gang laws, that there were some violations in it. It's entirely possible, the Board concluded, that this was legitimate law enforcement activity. I see I'm running out of time. Would you permit me to just wrap things up? To conclude, the Board need not and should not decide the social group issue here. It has yet to be decided. Order of the Court. Oh, I'm sorry. The Court should not decide it here. It has yet to be decided on the first instance by the Board. And as I've indicated, the Board gives separate independent bases for its decision to deny Petitioner's application. That decision should be upheld and Petitioner's application should be denied. Thank you. Thank you. Mr. Morgan, you have a short amount of time remaining for rebuttal. Thank you, Your Honor. Well, I think what it comes down to is I think Your Honors appreciate the gravity of what happened to the Petitioner at the hands of the police in El Salvador. I want to emphasize the Montesino case, 915 F. 2nd, 518 from 1990, where this Court held whether an act is or is not persecution cannot depend on whether it is rational or strategic from the point of view of the persecutors. Also, I'd like to emphasize that this is a case carefully reviewed during three days of testimony with massive submissions from the government, after which the immigration judge found that Mr. Pena had been the victim of persecution on the grounds of his membership in a group comprised of people who have identifiable signs indicating that they were gang members. So what the Board of Immigration Appeals did in this case was to overturn that judge on grounds that I think are not proper. Is your client out of custody? My best information is that he is, Your Honor. I'd like to thank counsel for the Petitioner appearing here pro bono today. Thank you. Thank you. We appreciate the arguments that we've received today. The case just argued is submitted, and we will stand adjourned. All rise.
judges: Trott, Graber, Beezer